IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JENNIFER L GIBBS**                                                                                    **PLAINTIFF**

V.                          CASE NO. 4:21-CV-00127-KGB-ERE

**COMMISSIONER of**
**SOCIAL SECURITY ADMINISTRATION**                                   **DEFENDANT**

### RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine G. Baker. Either party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.      INTRODUCTION**

On January 6, 2016, Jennifer Gibbs filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning October 15, 2009. (Tr. at 10). Her claims were denied both initially and upon reconsideration. *Id*. After conducting a hearing, an Administrative Law Judge ("ALJ") denied Ms.

Gibbs' application on February 7, 2018. (Tr. at 26). The Appeals Council denied her request for review, and she filed a civil action seeking judicial review of her claim. (Tr. at 1, 1307).

Once her case was before the District Court, the Commissioner filed a motion to reverse and remand the case to the Social Security Administration ("SSA") for further consideration. *See* 42 U.S.C. § 405(g). The Court granted the motion on February 6, 2019. (Tr. at 1312). Upon notice of the remand, the Appeals Council vacated the Commissioner's 2018 decision and remanded the case to a second ALJ with instructions to obtain supplemental evidence and issue a new decision. (Tr. at 1319-20).

After conducting a video hearing on December 12, 2019, the ALJ denied Ms. Gibbs' application on February 24, 2020. (Tr. at 1254, 1266). Ms. Gibbs sent written exceptions to the Appeals Council explaining the reasons why she disagreed with the decision. (Tr. at 1244). The Appeals Council considered her exceptions, but found no reason under its rules to assume jurisdiction of her case. (Tr. at 1244). The ALJ's decision thus became the final decision of the Commissioner after court remand. *See* 20 C.F.R. § 404.984(a).

Ms. Gibbs now seeks judicial review of the ALJ's February 24, 2020 decision. For the reasons stated below, the Court should affirm the Commissioner's decision.

## II.     THE COMMISSIONER'S DECISION

The ALJ found that Ms. Gibbs had not engaged in substantial gainful activity during the period from her alleged onset date of October 15, 2009 through her date last insured of March 31, 2015.[1] (Tr. at 1256). At Step Two of the evaluative process,[2] the ALJ found that Ms. Gibbs had the following severe impairments: lumbar degenerative disc disease, colitis, asthma, and chronic fatigue syndrome. *Id*.

After finding Ms. Gibbs' impairments did not meet or equal a listed impairment, the ALJ determined that, through her date last insured, she had the residual functional capacity ("RFC") to lift and carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk two hours in an eight-hour workday; sit six hours in an eight-hour workday with the ability to sit on a cushion chair; push and/or pull 10 pounds occasionally and less than 10 pounds frequently; and occasionally stoop, kneel, crouch, crawl, balance, and climb stairs. (Tr. at 1258). The ALJ also found that Ms. Gibbs needed to avoid exposure to excessive airborne

---

[1] Neither party challenges the ALJ's finding that Ms. Gibbs was last insured for Title II purposes on March 31, 2015. (Tr. at 1254). To qualify for benefits, Ms. Gibbs must establish that she was under a disability on or before that date. *See* 42 U.S.C. § 423; 20 C.F.R. § 404.131. Therefore, the Court will only consider Ms. Gibbs' medical condition as of her last date insured. *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014).

[2] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)–(g).

irritants and extreme heat or cold, and required ready access to the bathroom (bathroom in close proximity) with an allowed break once an hour if needed and as necessary. *Id*.

Relying on the testimony of a Vocational Expert ("VE"), the ALJ found that, through her date last insured, Ms. Gibbs was unable to perform her past relevant work as a schoolchild care attendant, but Ms. Gibbs' RFC would allow her to perform jobs existing in significant numbers in the national economy, including jobs such as document specialist, addresser, and nut sorter. (Tr. at 1264-65). The ALJ thus concluded that Ms. Gibbs was not disabled. (Tr. at 1266).

### III. DISCUSSION

#### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015).

The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

### B. Ms. Gibbs' Arguments on Appeal

Ms. Gibbs argues that the ALJ's decision is not supported by substantial evidence. First, she argues that the ALJ erred by making unfavorable administrative findings that contradicted those made by the prior ALJ in 2018. Next, she argues that the ALJ erred at Step Two by finding that her migraines and fibromyalgia were non-severe impairments. Finally, she asserts that the hypothetical that the ALJ presented to the VE failed to precisely describe her pulmonary limitations, so the VE's testimony was insufficient to support the ALJ's finding that she could perform other work in the national economy. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Ms. Gibbs first argues that the ALJ's Step Two and RFC findings were prohibited by collateral estoppel because they contradicted findings made by the first ALJ in the 2018 decision denying benefits. The Commissioner contends that the doctrine of collateral estoppel does not apply in this case because the 2018 decision is not a final judgment that can preclude the ALJ's findings.

A prior social security disability decision can only have preclusive effect once the decision becomes final. *Hardy v. Chater*, 64 F.3d 405, 407 (8th Cir. 1995). In

5

this case, upon remand, the Appeals Council vacated the first ALJ's decision and remanded the case to a second ALJ with instructions to issue a new decision. (Tr. at 1319). The Eighth Circuit has held that an ALJ's decision that has been vacated by the Appeals Council is not final for purposes of collateral estoppel. *Aguiniga v. Colvin*, 833 F.3d 896, 900 (8th Cir. 2016). Thus, Ms. Gibbs' first argument fails. The ALJ was free to review all of the evidence of record and reach his own conclusions without regard to the first ALJ's prior administrative findings.

For her second argument, Ms. Gibbs faults the ALJ for finding that her migraines and fibromyalgia were not severe impairments at Step Two. Her argument regarding migraines is meritless. She contends the ALJ applied an incorrect legal standard for medical severity by noting that "the claimant has not generally received the type of medical treatment one would expect for an individual due to headaches" and concluding that the medical evidence of record failed to "suggest serious functional limitations stemming from the claimant's headaches." (Tr. at 1257). But the ALJ explicitly found that Ms. Gibbs' migraines "would pose no more than a minimal effect on [her] ability to perform basic work activities," which is the appropriate standard to apply at Step Two. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Ms. Gibbs had the burden to establish that her migraines were severe, *id.*, and she has not presented any evidence indicating that her reported migraines had more than a minimal effect on her ability to perform work-related activities. In

light of Ms. Gibbs' failure to provide a developed argument on this matter, the Court need not pursue the issue any further. See *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005). For the reasons discussed above, it is irrelevant that the ALJ's findings contradicted those from the 2018 decision. Ms. Gibbs has not shown error on this basis.

Ms. Gibbs also challenges the ALJ's Step Two finding that her fibromyalgia was non-severe. Ms. Gibbs was not officially diagnosed with fibromyalgia until nearly a year after her date last insured. Although the ALJ acknowledged the late diagnosis, he found that it nevertheless failed to satisfy the criteria necessary for establishing a medically determinable impairment ("MDI") of fibromyalgia. *See* Social Security Ruling ("SSR") 12-2p; Evaluation of Fibromyalgia, 2012 WL 3104869.[3] The ALJ specifically found that the record did not establish a history of

---

[3] SSR 12-2p explains that a claimant can establish an MDI of fibromyalgia if a physician has diagnosed the claimant with fibromyalgia and has provided evidence that meets one of the two sets of criteria described in the SSR for diagnosing fibromyalgia, as long as the physician's diagnosis is not inconsistent with the other evidence in the claimant's case record. 2012 WL 3104869, at *2.

To meet the 1990 American College of Rheumatology ("ACR") Criteria, the claimant must have: (1) a history of widespread pain, including pain in all quadrants of the body as well as axial skeletal pain, that has persisted for at least three months; (2) at least 11 positive tender points on physical examination that must be found bilaterally (on the left and right sides of the body) and both above and below the waist; and (3) evidence that other disorders that could be the cause of the claimant's symptoms or signs were excluded. SSR 12-2p, 2012 WL 3104869, at *2-3.

To meet the 2010 ACR Preliminary Diagnostic Criteria, the claimant must have: (1) a history of widespread pain as described above; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or

widespread pain or bilateral tender points both above and below her waist, and that her degenerative disc disease had not been ruled out as a possible or probable cause of her symptoms. (Tr. at 1257).

Ms. Gibbs cites multiple medical records and asserts that they contradict the ALJ's findings. But the evidence does not establish that a physician diagnosed her with fibromyalgia during the relevant time period. Several records indicate that she reported having a history of fibromyalgia after being diagnosed by a local rheumatologist sometime in 2014. However, the only rheumatology records from that time period do not support these statements. (Tr. at 283-88, 500-05). Moreover, in her briefing, Ms. Gibbs concedes that her rheumatologist, Dr. Lisa Lowery, did not diagnose her with fibromyalgia. (*Doc. 28 at 22*). Dr. Lowery's notes indicate only that Ms. Gibbs' husband "asked [Dr. Lowery] about fibromyalgia as one of the potential causes of chronic pain" that Ms. Gibbs had reported since being in a car wreck. (Tr. at 486). Dr. Lowery noted that Ms. Gibbs already had a prescription for Lyrica and explained to Ms. Gibbs and her husband that the treatment for both pain symptoms and fibromyalgia was the same. Dr. Lowery recommended an exercise program, cognitive behavioral therapy, and mindfulness techniques to manage her chronic pain.

---

memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. SSR 12-2p, 2012 WL 3104869, at *3.

Ms. Gibbs does not cite any records from the relevant period showing that she had the requisite tender points to establish fibromyalgia as a medically determinable impairment. She had 18 tender points in February 2016, but this exam postdates her date last insured by nearly a year and does not clearly relate to her condition before March 31, 2015. (Tr. at 607). Although the ALJ addressed these records in his analysis, he emphasized that Ms. Gibbs had undergone numerous physical examinations during the relevant time period, and none of those exams established that Ms. Gibbs suffered bilateral tender points above and below her waist. The record lacks substantial evidence to support a finding that Ms. Gibbs met the tender points criteria during the relevant time period. See *Pyland v. Apfel*, 149 F.3d 873, 877-78 (8th Cir. 1998) (explaining that evidence outside of the relevant time period cannot serve as the only proof of symptoms required to meet disability criteria).

Additionally, the record evidence does not overwhelmingly contradict the ALJ's finding that Ms. Gibbs failed to demonstrate a history of widespread pain in all quadrants of her body that persisted for at least three months. Ms. Gibbs cites two treatment notes referring to her reports of "body" pain and "hurting all over" between April 10 and June 2, 2014, but these notes do not establish the three-month time span required by either set of criteria in SSR 12-2p. (Tr. at 858, 866). At an exam in 2016, she reported chronic, widespread musculoskeletal pain lasting for at least two years. (Tr. at 615). But, as the ALJ noted, the evidence from the relevant time period does

9

not support this statement, which was made long after her date last insured. Most of Ms. Gibbs' pain complaints and treatment involved pain in her back stemming from various injuries and degenerative disc disease. Without evidence of the requisite widespread pain during the relevant time period, Ms. Gibbs cannot establish that she had a medically determinable impairment of fibromyalgia. *See* SSR 12-2p at II.A. and II.B. Substantial evidence supports the ALJ's finding that the evidence did not establish fibromyalgia as a medically determinable impairment before March 31, 2015.

Even if the evidence did establish a qualifying fibromyalgia diagnosis prior to the last date insured, "every fibromyalgia diagnosis does not entitle a claimant to benefits." *Grindley v. Kijakazi*, 9 F.4th 622, 629 (8th Cir. 2021). For fibromyalgia to be a severe impairment, Ms. Gibbs must prove that it had more than a minimal impact on her ability to do basic work activities. 20 C.F.R. 404.1520(c). Ms. Gibbs has not met her burden. Physical exams during 2012-2015 showed normal musculoskeletal and neurological findings, with normal range of motion and strength in her extremities, no joint enlargement or tenderness, and normal gait and station. (Tr. at 742, 859, 867-68, 886, 895, 1260). Ms. Gibbs did not receive any ongoing, regular treatment for fibromyalgia during the relevant time period beyond taking medication, which she admitted helped control her symptoms of joint pain. (Tr. at 442, 1260). Improvement in a claimant's condition with medication can

support a finding that the claimant's impairment is not severe. *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996). The ALJ also noted that no treating physician had determined that Ms. Gibbs had any exertional or functional limitations resulting from the condition. This lack of restriction on her activities is inconsistent with her claim of disability, in light of multiple recommendations from her treating sources that she increase her physical exercise. *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). Substantial evidence supports the ALJ's finding that her fibromyalgia posed no more than a minimal effect on her ability to do work.

Ultimately, even if the Court were to find that the ALJ erred in determining her fibromyalgia was non-severe, the error would be harmless, because Ms. Gibbs has "fail[ed] to provide some indication that the ALJ would have decided differently if the error had not occurred." *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (internal quotation omitted). The ALJ continued his analysis past Step Two and considered all of Ms. Gibbs' symptoms—including her complaints of constant "all over" pain from fibromyalgia, chronic fatigue, extremity weakness, abdominal issues, and sleep problems—in formulating her RFC. (Tr. at 1258-64). The ALJ nevertheless found that Ms. Gibbs' subjective complaints were inconsistent with her daily activities, her numerous normal physical exam findings, her lack of functional restrictions from physicians, and her history of conservative treatment for her conditions. (Tr. at 1263). Ms. Gibbs has not shown that her RFC would have been

11

any more restrictive had the ALJ found at Step Two that her fibromyalgia was a severe impairment, nor has she identified any limitation from fibromyalgia that is unaccounted for in her RFC. See *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) ("Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC.") (internal citations omitted). Any Step Two error in this regard was harmless.

Ms. Gibbs' remaining fibromyalgia claims are merely requests that the Court re-weigh the evidence presented to the ALJ, which the Court is not permitted to do. See *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Substantial evidence supports the ALJ's determination that Ms. Gibbs failed to establish that her fibromyalgia was a severe MDI before March 31, 2015.

For her final argument, Ms. Gibbs claims that the hypothetical the ALJ posed to the VE was deficient because it failed to precisely describe her pulmonary limitations. "[T]estimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997). Consistent with his RFC determination, the ALJ's hypothetical described a need to avoid exposure to "excessive airborne irritants." (Tr. at 1304). Ms. Gibbs faults the ALJ's use of the term "excessive" as vague and undefined, and she argues that even occasional exposure to pulmonary irritants may be too much

for her to tolerate. Any potential error on this point was harmless, because the *Dictionary of Occupational Titles* describes each of the jobs cited by the VE as requiring zero exposure to toxic caustic chemicals, atmospheric conditions, or other environmental conditions.[4] *See* DOT 249.587-018, 1991 WL 672349 (document specialist); DOT 209.587-010, 1991 WL 671797 (addresser); DOT 521.687-076, 1991 WL 674226 (nut sorter). Thus, none of these jobs would expose Ms. Gibbs to any airborne or pulmonary irritants. Ms. Gibbs has failed to show reversible error.

## IV. CONCLUSION

For the reasons discussed above, the Court finds that the ALJ applied proper legal standards in evaluating Ms. Gibbs' claims and substantial evidence supports the decision to deny benefits. The Court further finds that Ms. Gibbs' remaining arguments are without merit.

IT IS THEREFORE RECOMMENDED that the Court affirm the decision and enter judgment in favor of the Commissioner.

IT IS SO ORDERED this 17th day of June, 2022.

_____
UNITED STATES MAGISTRATE JUDGE

---

[4] Appendix D to the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* states that exposure to toxic caustic chemicals means "[e]xposure to possible bodily injury from toxic or caustic chemicals." Exposure to atmospheric conditions is described as "[e]xposure to such conditions as fumes, noxious odors, dusts, mists, gases, and poor ventilation, that affect the respiratory system, eyes, or the skin." *Id*. Other environmental conditions include conditions not defined elsewhere. *Id*.